## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **EVANSTON INSURANCE COMPANY,** | |
| **Plaintiff,** | |
| **v.** | **CASE NO. _____** |
| **MEDICAL SOLUTIONS, L.L.C.; WANDA J. BRAUN; THOMAS J. WALTERS; LINDA FICKEN; DONALD RIEDEL; AND RONNIE D. MURPHY AND CONNIE E. MCNEAL, as Co-Executors of the ESTATE OF ELEANOR Y. MURPHY, deceased, individually, and on behalf of all other surviving heirs-at-law of ELEANOR Y. MURPHY, deceased,** | **COMPLAINT** |
| **Defendants.** | |

   **COMES NOW** Plaintiff Evanston Insurance Company ("EIC"), pursuant to 28 U.S.C. §§ 2201(a) and 2202 and Federal Rule of Civil Procedure 57, and for its Complaint against Defendants Medical Solutions, L.L.C.; Wanda J. Braun; Thomas J. Walters; Linda Ficken; Donald Riedel; and Ronnie D. Murphy and Connie E. McNeal, as Co-Executors of the Estate of Eleanor Y. Murphy, deceased, individually, and on behalf of all surviving heirs-at-law of Eleanor Y. Murphy, deceased (collectively, "Defendants"), states and alleges as follows:

### THE PARTIES

   1.    EIC is an Illinois-domiciled insurance company that is an eligible non-admitted excess/surplus lines insurer in Kansas and a surplus lines insurer in Nebraska.

   2.    Medical Solutions, L.L.C. ("Medical Solutions") is a Delaware limited liability company that has its principal place of business at 9101 Western Avenue, Suite 101, Omaha, NE 68114.    Medical Solutions may be served through its registered agent, CSC-Lawyers Incorporating Service Company, Suite 1900, 233 South 13th Street, Lincoln, NE 68508.

3.     Upon information and belief, the members of Medical Solutions are Varun Bedi, John Bretl, Joe Cottone, Steve Francis, Patrick Duffy, Mike Green, Dale Williams, Scott Anderson, and Chad Spooner.

4.     Upon information and belief, Varun Bedi is a New York citizen, who resides at 24 Myrtledale Road, Scarsdale, NY 10583-7334 and/or 300 Mercer Street, 24L, New York, NY 10003 and accepts mail at his business address at 60 East 42nd Street, Suite 4510, New York, NY 10165.

5.     Upon information and belief, John Bretl is a New York citizen, who resides at 10 Cloister Court 3, Buffalo, NY 14219-1005 and accepts mail at his business address at 60 East 42nd Street, Suite 4510, New York, NY 10165.

6.     Upon information and belief, Joe Cottone is a citizen of either Georgia or New York, who resides at 85 Wakefield Drive NE, Atlanta, GA 30309-1538 and accepts mail at his business address at 60 East 42nd Street, Suite 4510, New York, NY 10165.

7.     Upon information and belief, Steve Francis is a citizen of either Louisiana or California, who resides at 819 S. Fashion Blvd., Hahnville, LA 70057-2074.

8.     Upon information and belief, Patrick Duffy is a Nebraska citizen, who resides at 420 Fairacres Road, Omaha, NE 68132-2710 and accepts mail at his business address at 1601 Duffy Street, Suite 3800, Omaha, NE 68102.

9.     Upon information and belief, Mike Green is a New York citizen who accepts mail at his business address at 60 East 42nd Street, Suite 4510, New York, NY 10165.

10.     Upon information and belief, Dale Williams is a Nebraska citizen, who accepts mail at his business address at 9101 Western Avenue, Suite 101, Omaha, NE 68114.

4847-7562-1669

11.     Upon information and belief, Scott Anderson is a Nebraska citizen, who resides at 21174 Riha Road, Springfield, NE 68059-7094 and accepts mail at his business address at 9101 Western Avenue, Suite 101, Omaha, NE 68114.

12.     Upon information and belief, Chad Spooner is a citizen of either Connecticut or New York, who resides at 20 Walnut Ridge Road, Stamford, CT 06905-3032 and accepts mail at his business address at 60 East 42nd Street, Suite 4510, New York, NY 10165.

13.     Wanda J. Braun ("Braun") is a citizen of Russell County, Kansas.

14.     Thomas J. Walters ("Walters") is a Kansas citizen who resides at 2151 Feedlot Road, Hays, KS 67601.

15.     Linda Ficken ("Ficken") is a Kansas citizen who resides at 420 Farmer Avenue, Andover, KS 67002.

16.     Donald Riedel ("Riedel") is a citizen of La Crosse, Rush County, Kansas.

17.     Ronnie D. Murphy and Connie E. McNeal, two of Eleanor Y. Murphy's ("Murphy") four surviving children, are citizens of Osborne County, Kansas.  They are co-executors of the Estate of Eleanor Y. Murphy pursuant to an Order Appointing Co-Executors issued by the Rooks County, Kansas District Court on November 27, 2012.

### JURISDICTION AND VENUE

18.     The Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because EIC and the Defendants are citizens of different states and the amount in controversy exceeds $75,000 in that:  (i) the per occurrence limit of liability under EIC Policy No. SM 870298 is $2,000,000 and (ii) each of the individual Defendants has alleged claims against Defendant Medical Solutions in excess of $75,000 in lawsuits filed in the District Court for Ellis County, Kansas.  The Court also has personal jurisdiction in that:  (a) Medical

Solutions transacted business in this state and is the subject of a Kansas court action that could result in judgment being taken against it and (b) the individual Defendants are Kansas residents.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district in that the individual Defendants were infected at Hays Medical Center.

FACTUAL BACKGROUND

A.      **History of the Hepatitis C Infections**

20.     This action arises out of five lawsuits that the individual Defendants filed in the District Court of Ellis County, Kansas following their discovery that a traveling radiology technician employed by Medical Solutions and placed with Hays Medical Center, Inc. ("Hays Medical Center") in Hays, Kansas had caused them to become infected with Hepatitis C.  There is no coverage for these lawsuits.

21.     Medical Solutions is a traveling nursing company that places nurses and other healthcare professionals with healthcare facilities across the country.

22.     Medical Solutions re-hired David Kwiatkowski ("Kwiatkowski") in spring 2010.

23.     Kwiatkowski was placed with Hays Medical Center, where he worked from May through September 2010.

24.     It was later discovered that Kwiatkowski was addicted to the opiate, Fentanyl.

25.     While working at Hays Medical Center, Kwiatkowski took syringes pre-filled with Fentanyl and injected himself.  He then removed the dirty, used needles, cleaned the syringes by pulling the plunger back and forth to wash them out, filled the syringes with saline, and then placed the syringes back in their original location.

4

26.     In June 2010, Kwiatkowski learned he was infected with Hepatitis C.  Despite his diagnosis, he continued stealing Fentanyl-filled syringes, injecting himself, and returning the now saline-filled syringes, which were then used on Hays Medical Center patients.

27.     Braun was a patient at Hays Medical Center in June 2010.  She first tested positive for Hepatitis C on August 3, 2012.

28.     Walters was a patient at Hays Medical Center between May and September 2010. He first tested positive for Hepatitis C on July 31, 2012.

29.     Ficken was a patient at Hays Medical Center between May and September 2010. She first tested positive for Hepatitis C on July 31, 2012.

30.     Riedel was a patient at Hays Medical Center between July 28 and 31, 2010.  He was first notified of his Hepatitis C diagnosis between late July and early August 2012.

31.     Murphy was a patient at Hays Medical Center on June 7 and July 12, 2010.  She first tested positive for Hepatitis C in late 2010, but did not become aware that Kwiatkowski was the cause of her Hepatitis C until on or around July 19, 2012, when the story was first reported in the news.  She died on November 3, 2012.

32.     Kwiatkowski also infected patients at Johns Hopkins Hospital in Baltimore, Maryland while employed by Medical Solutions from July through November 2009.

33.     Kwiatkowski further infected many more patients at Exeter Hospital in New Hampshire while he was employed by another healthcare staffing company from April 2011 through June 2012.

5

34.     Kwiatkowski was charged with fourteen federal criminal counts on or around July 2012.   He was charged with seven counts of acquiring a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge under 21 U.S.C. § 843(a)(3) and seven counts of tampering with a consumer product in violation of 18 U.S.C. § 1365(a).

35.     Shortly thereafter, on August 9, 2012, Medical Solutions reported a claim to EIC.

36.     Kwiatkowski pled guilty to all fourteen counts, and was sentenced to thirty-nine years in prison on December 2, 2013.

**B.    The Individual Defendants' Allegations Against Medical Solutions in the Lawsuits Filed in the District Court of Ellis County, Kansas**

37.     The individual Defendants filed suit in the District Court of Ellis County, Kansas against multiple defendants, including Medical Solutions.   These lawsuits are styled as follows: *Braun v. Hays Medical Center, Inc.*, Case No. 14CV105; *Walters v. Hays Medical Center, Inc.*, Case No. 14CV102; *Ficken v. Hays Medical Center, Inc.*, Case No. 14CV103; *Riedel v. Medical Solutions, L.L.C.*, Case No. 13CV88; and *Murphy v. Hays Medical Center, Inc.*, Case No. 14CV104 (collectively, the "Underlying Lawsuits").   The Underlying Lawsuits are attached hereto as **Exhibits A-E** and are incorporated herein by reference.

38.     The Underlying Lawsuits, with the exception of Murphy, allege two counts against Medical Solutions:   one count of negligence and one count for loss of consortium. Murphy only alleges one count of negligence against Medical Solutions.   (Ex. A at ¶¶ 67, 71-75, 80; Ex. B at ¶¶ 67, 71, 73-75, 80; Ex. C at ¶¶ 67, 71, 73-75; Ex. D at ¶¶ 53-54, 58-59, 78-79, 81; Ex. E at ¶¶ 75, 78-79, 81-84).

39.     The Underlying Lawsuits allege that Kwiatkowski's committed his acts and omissions in the course and scope of his employment with Medical Solutions.   (Ex. A at ¶ 67; Ex. B at ¶ 67; Ex. C at ¶ 58; Ex. D at ¶ 67; Ex. E at ¶ 78).   Accordingly, the Underlying Lawsuits

6

allege that Medical Solutions is vicariously liable.  (Ex. A at ¶¶ 5, 67; Ex. B at ¶¶ 5, 67; Ex. C at ¶¶ 5, 67; Ex. D at ¶¶ 7, 9, 11, 55; Ex. E at ¶¶ 10, 75, 79).

40.     The Underlying Lawsuits also allege that Medical Solutions negligently hired, trained, supervised, and/or retained Kwiatkowski.  (Ex. A at ¶¶ 21–22, 73; Ex. B at ¶¶ 21–22, 73; Ex. C at ¶¶ 21–22, 73; Ex. D at ¶¶ 31, 33, 54; Ex. E at ¶¶ 26–27, 81).  The Underlying Lawsuits contend that Medical Solutions negligently failed to follow up with Kwiatkowski's prior employer, SpringBoard, about why Kwiatkowski was ineligible for rehire.  (Ex. A at ¶ 22; Ex. B at ¶ 22; Ex. C at ¶ 22; Ex. D at ¶ 33; Ex. E at ¶ 27).  Instead, the Underlying Lawsuits contend that a Medical Solutions supervisor negligently approved Kwiatkowski's employment with Medical Solutions thirty-five minutes after being notified of the ineligibility for rehire without requested elaboration.  (Ex. A at ¶ 21; Ex. B at ¶ 21; Ex. C at ¶ 21; Ex. D at ¶ 31; Ex. E at ¶ 26).

## C.     The Insurance Policies

### 1.     *The Insurance Policy in Effect During Kwiatkowski's Placement at Hays Medical Center*

41.     EIC issued Policy No. SM-870298 to Medical Solutions, Inc. as the Named Insured for the period beginning at 12:01 a.m. on February 11, 2010 and ending at 12:00 a.m. on February 11, 2011 (the "2010 Policy").  The 2010 Policy is attached hereto as **Exhibit F** and incorporated herein by reference.

42.     Medical Solutions, L.L.C. is not a named insured on the 2010 Policy.  The 2010 Policy provides that an "[a]ssignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon."  (Ex. F at Form SM-20001-01, p. 3).  There is no such endorsement.

43.     The 2010 Policy also defines the scope of coverage for additional insureds pursuant to the following endorsement, which states in relevant part:

7

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1.      Section The Insured is amended by the addition of the following:

        Whenever used in this Coverage Part, the unqualified word Insured shall also mean Additional Insured.

2.      **Additional Insured** means, whenever used in this endorsement, the following:

        any person or organization to whom the Named Insured is obligated by valid written contract to provide coverage as an additional insured to such person or organization but only as respects liability for Bodily Injury or Property Damage caused by the negligence of the Named Insured and only for Occurrences, Claims or coverage not otherwise excluded in the policy.

3.      Coverage provided to any Additional Insured as defined herein shall apply solely to an Occurrence involving the products, goods, operations or premises covered by this Coverage Part.

(Ex. F at Form EIC 4671).

        44.    The 2010 Policy includes two coverage forms:   an occurrence-based general

liability coverage form and a claims made professional liability coverage form.  (Ex. F at Form

SM-20001-01, pp. 1-4 and pp. 20-25).

        45.    The general liability coverage form provides the following coverage under

Coverage A, subject to all terms, conditions, exclusions, and endorsements in the 2010 Policy:

A.      **Coverage A. - Bodily Injury and Property Damage Liability:**  The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 6.A.1. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims made against the Insured and reported to the Company pursuant to Section Claim Reporting Provision, for Bodily Injury or Property Damage to which this Coverage Part applies caused by an Occurrence, provided:

        1.      the entirety of such Bodily Injury or Property Damage and Occurrence happens during the Policy Period; and

        2.      such Bodily Injury or Property Damage arises out of only those products, goods, operations or premises specified in Item 4.A. of the Declarations.

8

4847-7562-1669

(Ex. F at Form SM-20001-01, pp. 8–9).

46.     The 2010 Policy defines "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Ex. F at Form SM-20001-01, p. 12).

47.     The Limits of Liability for each occurrence under Coverage A of the general liability coverage form is $2,000,000.  (Ex. F at Declarations, § 5.A.1.(i)).

48.     The Limits of Liability are not increased because more than one person brings a claim if there is one occurrence per the following provision:

> G.     **Multiple Insureds, Claims, Occurrences, Offenses and Claimants:** The inclusion herein of more than one Insured in any Claim or suit or the making of Claims or the bringing of suits by more than one person or organization shall not operate to increase the Limits of Liability stated in Item 5.A. of the Declarations.
>
> More than one Bodily Injury and/or Property Damage, including any continuation, change or resumption of such Bodily Injury or Property Damage, arising out of a single Occurrence shall be considered a single Occurrence.  All such Bodily Injury or Property Damage shall be deemed to take place on the date on which the earliest Bodily Injury or Property Damage happens.

(Ex. F at Form SM-20001-01, p. 17).

49.     The Limits of Liability under Coverage A of the general liability coverage form also is self-eroding pursuant to the following provision:

**DEFENSE, SETTLEMENTS AND CLAIM EXPENSES**

> The Company shall have the right and duty to defend and investigate any Claim to which Coverage A. and/or B. under this Coverage Part applies.  The Company may make such investigation and settlement of any Claim as it deems expedient. Claim Expenses incurred in defending and investigating a Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 5.A. of the Declarations.  Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible.  The Company shall have no obligation to pay any Damages or to defend or to continue to defend any Claim or to pay Claim Expenses for Claims after the applicable Limit or Limits of Liability stated in Item 5.A of the Declarations have been exhausted.

(Ex. F at Form SM-20001-01, p. 18).

50.     The 2010 Policy excludes the following types of claims from coverage under Coverage A of the general liability coverage form:

    a.   "any Claim based upon or arising out of the rendering of or failure to render professional services by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible";

    b.   "any Claim based upon or arising out of Bodily Injury sustained by any patient, person or resident of a healthcare facility receiving Professional Services of any Insured or any such Claim brought by or on behalf of the spouse, child, parent, grandparent, brother, sister, or partner of such patient, person or resident of a healthcare facility";

    c.   "any Claim based upon or arising out of Bodily Injury . . . expected or intended from the standpoint of the Insured . . ."; and

    d.   "any Claim based upon or arising out of any products or goods manufactured, sold, handled, or distributed or work completed by the Insured or by others operating under the direction or control of the Insured in violation of any law, statute, ordinance, or regulation, Federal, State or Municipal government, or agencies thereof."

(Ex. F at Form SM-20001-01, pp. 13, 15).

    2.     ***The Subsequent Renewal Policy***

51.     EIC subsequently issued Policy No. SM-877772 to Medical Solutions, Inc. as the Named Insured for the period beginning at 12:01 a.m. on February 11, 2011 and ending at 12:00 a.m. on February 11, 2012 (the "2011 Policy").

4847-7562-1669

52.     The 2011 Policy is not at issue, but there is no coverage because:   (a) the allegations of negligence and wrongful death in the Underlying Lawsuits, including, but not limited to, negligent hiring, training, supervision, and retention, allege an occurrence that took place between May and September 2010, when Medical Solutions placed Kwiatkowski with Hays Medical Center and (b) Medical Solutions reported the claim to EIC on August 9, 2012, which is outside the policy period.

### 3.     *The Policy in Effect at the Time of Kwiatkowski's Arrest*

53.     EIC issued Policy No. SM-885033 to Medical Solutions, Inc. as the Named Insured for the period beginning at 12:01 a.m. on February 11, 2012 and ending at 12:00 a.m. on February 11, 2013 (the "2012 Policy").   The 2012 Policy is attached hereto as **Exhibit G** and incorporated herein by reference.

54.     Medical Solutions, LLC was substituted as the Named Insured on the 2012 Policy by endorsement, effective June 8, 2012.  (Ex. G at Form EIC 4320-01).

55.     The 2012 Policy also includes two coverage forms:  an occurrence-based general liability coverage form and a claims made professional liability coverage form.  (Ex. G at Form SM-20001-01, pp. 7-25).

56.     The claims made professional liability coverage form provides the following coverage, subject to all terms, conditions, exclusions, and endorsements in the 2012 Policy:

> The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 6.B. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to the Section A., Claim Reporting Provision, for Professional Personal Injury to which this Coverage Part applies by reason of any act, error or omission in Professional Services rendered that should have been rendered by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, and arising out of the conduct of the Insured's Professional Services provided:

11

A.    the act, error or omission happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and

B.    prior to the effective date of this policy the insured had no knowledge of such act, error or omission or any fact, circumstance, situation or incident which may result in a Claim under this Coverage Part.

(Ex. G at Form SM-20001-01, p. 20).

57.    The 2012 Policy defines "Professional Personal Injury," in relevant part, as "any bodily injury, mental injury, sickness, disease, emotional distress or mental anguish, including death resulting therefrom of any patient, person, or resident of a healthcare facility receiving Professional Services."  (Ex. G at Form SM-20001-01, p. 21).

58.    The 2012 Policy defines "Personal Services" as "Healthcare Staffing."  (Ex. G at Form SM-20001-01, p. 1).

59.    The 2012 Policy excludes the following types of claims from coverage under professional liability coverage form:

e.    "any Claim based upon or arising out of any dishonest, fraudulent, criminal, malicious or knowingly wrongful acts, errors or omissions intentionally committed by or at the direction of the Insured";

f.    "injury arising out of the performance of a criminal act or caused by a person while under the influence of intoxicants or narcotics"; and

g.    "any Claim arising out of general liability or products liability."

(Ex. G at Form SM-20001-01, pp. 21–22).

## FIRST CLAIM FOR DECLARATORY RELIEF—NO COVERAGE UNDER THE 2012 POLICY

60.    EIC incorporates and re-alleges Paragraphs 1 through 59 as if fully set forth herein.

4847-7562-1669

61.     Medical Solutions has advised EIC that it claims coverage under the 2012 Policy for claims made against it by Braun, Walters, Ficken, Riedel, and Murphy in the Underlying Lawsuits, including for the cost of defense.

62.     EIC has undertaken the defense of Medical Solutions in the Underlying Lawsuits under a reservation of rights; however, EIC has advised Medical Solutions that there is no coverage under the 2012 Policy for the Underlying Lawsuits.

63.     The 2012 Policy excludes coverage for:  (a) "any Claim based upon or arising out of any dishonest, fraudulent, criminal, malicious or knowingly wrongful acts, errors or omissions intentionally committed by or at the direction of the Insured;" (b) "injury arising out of the performance of a criminal act or caused by a person while under the influence of intoxicants or narcotics;" and (c) "any Claim arising out of general liability or products liability."  (Ex. G at Form SM-20001-01, pp. 21–22).

64.     There is no coverage under the 2012 Policy because Kwiatkowski, who was under the influence of Fentanyl or similar drugs when he intentionally tampered with syringes in violation of federal law, injured Braun, Walters, Ficken, Riedel, and Murphy by causing them to become infected with Hepatitis C.

65.     There is also no coverage under the 2012 Policy because the allegations of negligence and wrongful death in the Underlying Lawsuits, including, but not limited to, negligent hiring, training, supervision, and retention, arise out of general liability, and not professional liability, and allege an occurrence that took place between May and September 2010, when Medical Solutions placed Kwiatkowski with Hays Medical Center.

66.     For these reasons, an actual justiciable controversy exists concerning the rights, duties, and obligations of the parties arising out of the terms and conditions of the 2012 Policy,

4847-7562-1669

and EIC is entitled to a declaration that it owes no duty to defend or indemnify Medical Solutions in the Underlying Lawsuits under the 2012 Policy.

## SECOND CLAIM FOR DECLARATORY RELIEF—NO COVERAGE UNDER THE 2010 POLICY

67.     EIC incorporates and re-alleges Paragraphs 1 through 66 as if fully set forth herein.

68.     There is no coverage under the 2010 Policy because Medical Solutions is not an insured in that it was not substituted as the Named Insured in place of Medical Solutions, Inc. until June 8, 2012, when the 2012 Policy was amended by endorsement.  (Ex. G at Form EIC 4320-01).

69.     There is no endorsement to the 2010 Policy showing that EIC approved the assignment of the 2010 Policy to Medical Solutions; accordingly, any such assignment would be ineffective pursuant to the following policy language:  "[a]ssignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon."  (Ex. F at Form SM-20001-01, p. 3).

70.     There is also no coverage under the 2010 Policy for any professional services that Medical Solutions provided when it placed Kwiatkowski with Hays Medical Center pursuant to the following exclusions for:  (a) "any Claim based upon or arising out of the rendering of or failure to render professional services by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible" and (b) "any Claim based upon or arising out of Bodily Injury sustained by any patient, person or resident of a healthcare facility receiving Professional Services of any Insured or any such Claim brought by or on behalf of the spouse, child, parent, grandparent, brother, sister, or partner of such patient, person or resident of a healthcare facility."  (Ex. F at Form SM-20001-01, pp. 13 & 15–16).

14

71.    There is likewise no coverage under the 2010 Policy pursuant to the exclusion for "any Claim based upon or arising out of Bodily Injury . . . expected or intended from the standpoint of the Insured . . ."  (Ex. F at Form SM-20001-01, p. 13).  The infection of Braun, Walters, Ficken, Riedel, and Murphy was a natural and probable consequence of Kwiatkowski's intentional tampering with Fentanyl syringes at Hays Medical Center.  Furthermore, Medical Solutions should have known that its intentional act of approving Kwiatkowski to be hired and intentional failure to determine the factual basis for his ineligibility for rehire with a prior employer was likely to result in injury to patients at Hays Medical Center.

72.    Upon information and belief, the 2010 Policy also excludes coverage under the exclusion for "any Claim based upon or arising out of any products or goods manufactured, sold, handled, or distributed or work completed by the Insured or by others operating under the direction or control of the Insured in violation of any law, statute, ordinance, or regulation, Federal, State or Municipal government, or agencies thereof" because the duties that Medical Solutions directed Kwiatkowski to fulfill while placed with Hays Medical Center encompassed handling and administering medications to patients, including Fentanyl.

73.    For these reasons, an actual justiciable controversy exists concerning the rights, duties, and obligations of the parties arising out of the terms and conditions of the 2010 Policy, and EIC is entitled to a declaration that it owes no duty to defend or indemnify Medical Solutions in the Underlying Lawsuits under the 2010 Policy.

## PRAYER

**WHEREFORE,** Plaintiff Evanston Insurance Company prays that the Court enter a judgment:  (a) declaring that EIC does not owe a duty to defend or indemnify Medical Solutions in the Underlying Lawsuits under the 2010 Policy, 2011 Policy, and 2012 Policy; (b) ordering

4847-7562-1669

Medical Solutions to reimburse EIC for all attorneys' fees, expenses, and costs incurred by EIC in defending the Underlying Lawsuits (except as otherwise agreed by written agreement of the parties); (c) providing EIC with its costs incurred in bringing this action; and (4) providing such other and further relief as this Court deems just and equitable.

Dated this 5th day of August, 2015.

Respectfully submitted,

By:  */s/ M. Courtney Koger*

M. Courtney Koger                KS #15271
Meredith A. Webster            KS #25103
KUTAK ROCK LLP
Two Pershing Square
Suite 800
2300 Main Street
Kansas City, MO 64108
(816) 960-0090 (Telephone)
(816) 960-0041 (Facsimile)
Courtney.Koger@KutakRock.com
Meredith.Webster@KutakRock.com
ATTORNEYS FOR PLAINTIFF
EVANSTON INSURANCE COMPANY